EXHIBIT A
INDEX

| DELAWARE CHANCERY COURT PLEADINGS | | |
|---|---|---|
| D.I. # | Pleading | Tab |
| 1 | Verified Complaint for Equitable Relief | 1 |
| Supporting | Verifications to Complaint | 2 |
| Supporting | Exhibits A, G, I-J to Complaint<br>*Exhibits B-F, and H filed under seal* | 3 |
| Supporting | Supplemental Information Sheet | 4 |
| Supporting | Certificate of Rule 5.1 | 5 |
| Supporting | Letter to Court from Attorney Cliff C. Gardner | 6 |

01:23558582.1

# TAB 1

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DARUL AMAANAH ACADEMY, TAHSIYN ISMAA'EEL, IMAN ISMAA'EEL, individually and for the benefit of her minor children W.B. and M.B., MIA MILLER, individually and for the benefit of her minor children Y.A.M.-W. and Y.K.M.-W., DAEWANNA WORD, individually and for the benefit of her minor child S.W.T., BAHJEH RIZEQ, individually and for the benefit of her minor child M.A. and TIANA RUSSELL, individually and for the benefit of her minor child S.J., ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | C.A. No. 2018-____-____ |
| ) | |
| CITY OF WILMINGTON, WILMINGTON DEPARTMENT OF PARKS AND RECREATION, MAYOR MICHAEL S. PURZYCKI, in his official and personal capacities and KEVIN F. KELLEY, SR., in his official and personal capacities, ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

## VERIFIED COMPLAINT

Plaintiffs Darul Amaanah Academy ("Darul Amaanah"); Tahsiyn Ismaa'eel; Iman Ismaa'eel on behalf of herself and for the benefit of her minor children W.B. and M.B.; Mia Miller on behalf of herself and for the benefit of her minor children Y.A.M.-W. and Y.K.M.-W.; Daewanna Word on behalf of herself and for the benefit of her minor child S.W.T.; Bahjeh Rizeq on behalf of herself

and for the benefit of her minor child M.A. and Tiana Russell on behalf of herself

and for the benefit of her minor child S.J. (collectively, "Plaintiffs"), by and

through their undersigned attorneys, hereby bring this Verified Complaint against

the City of Wilmington (the "City"), the Wilmington Department of Parks and

Recreation (the "Parks Department"), Mayor Michael S. Purzycki ("Mayor

Purzycki") and Director of the Wilmington Department of Parks and Recreation

Kevin F. Kelley, Sr. ("Director Kelley" and, with the City, the Parks Department

and Mayor Purzycki, "Defendants").  Plaintiffs allege, upon personal knowledge

and upon information and belief, including the investigation of counsel and review

of publicly available information, as follows:

## NATURE OF THE PROCEEDINGS

1.     Each summer, children across the country spend fun, carefree days at

their local swimming pools and water parks.  Yet, for a community of Muslim

children in Wilmington, Delaware, this summer has been drastically different.

Instead of enjoying time at the pool with their family and friends, they have been

subjected to a pattern of discriminatory treatment by municipal employees of the

City working at public pools.

2.     Over twenty years ago, the predominately African-American Muslim

community in Wilmington founded Darul Amaanah, a nonprofit organization that

strives to teach local children basic life skills and instill them with pride in their

culture and faith.  Every year, Darul Amaanah holds its eagerly anticipated

summer camp, an educational program through which the children can make new

friends, meet positive role models, and enjoy fun summer activities, including

swimming in local pools.

3.     The City, Mayor Purzycki, the Parks Department and Director Kelley

are responsible for the operation and supervision of a number of swimming pools

that are open and available to the public during the summer.  The staff of Darul

Amaanah's summer camp regularly takes its students, who are between five and

twelve years old, to the City's public pools, including the Foster M. Brown

Community Pool ("Foster Brown"), which is directly adjacent to Darul Amaanah's

facility.  In fact, Foster Brown is located so close to Darul Amaanah – less than 50

yards[1] away – that its staff and children can see and hear patrons splashing and

enjoying the water from the facility's classrooms.

4.     Many of the children at Darul Amaanah, consistent with their

sincerely held religious beliefs, wear modest clothing that covers different parts of

their bodies when out in public, including while at the pool.  For years, these

children have swum at the City's public pools, including Foster Brown, without

---

[1]   A July 17, 2018 article published by the Delaware News Journal is attached
hereto as Exhibit A.  The photograph featured on the first page of that article
demonstrates the proximity of Foster Brown to Darul Amaanah's facility, a
cream-colored building with blue doors.

issue.  But in the 2018 summer season, without justification, Defendants and their employees have denied these children access to the pools and subjected them to discriminatory and harassing conduct, simply on account of the Darul Amaanah children's efforts to adhere to their religious beliefs.

5.     Defendants' only excuse for the unjust treatment of the children at Darul Amaanah – many of whom are preschool age – is that they are enforcing a policy that prohibits individuals from wearing cotton-based clothing in public pools.  The reality is that children in public swimming pools across the City have long worn cotton-based clothing.  For many local children, these items are the only garments that they can afford.  And although many children wear cotton clothing in the City's pools, only one group has been repeatedly targeted through the City's purported "no cotton" policy – the children of Darul Amaanah, whose clothing differs from that of other children's only in that Defendants' employees know the children wear it because of their religious beliefs.

6.     State regulations do not prohibit cotton clothing in public swimming pools.  Nor does the current signage posted at City pools, which states that patrons must wear "proper attire" at the pools and that "cutoff jeans" are prohibited.

7.     Throughout the summer, the staff of Darul Amaanah, along with the parents of the children against whom the City has discriminated, have raised concerns and sent complaints to Defendants and other City employees about their

4

mistreatment.  Those concerns have largely gone unaddressed.  Instead, Plaintiffs have received ever-shifting explanations about the purported "no cotton" policy and why it is being used against them, and the City has expressed outright support for one pool manager in particular who repeatedly discriminated against the children at Darul Amaanah.  As public outcry about the treatment of these young children mounted, Mayor Purzycki's office publicly issued a press release containing an "apology."  Yet, he never met with the children or their families, and privately continued to condone and attempt to justify the City's ongoing discriminatory conduct.

8.      In the summer of 2018, Wilmington city pools were open to the public at large from June 24 to August 18, three weekdays per week.  Of the 24 potential pool days at Foster Brown, the children at Darul Amaanah enjoyed only *one* harassment free day the entire summer.

9.      Foster Brown staff forced the children to leave or denied them entry outright for about half of the pool season.  During the last *fourteen* days of the season, the children did not dare return to Foster Brown, despite seeing the pool's cool blue waters each day of summer camp from Darul Amaanah's classrooms and backyard, because they knew they would be turned away or face discrimination if they tried.  Defendants' wrongful discriminatory conduct stole the entire 2018

swim season from these children.  2018 is a summer the children will always remember, but for the wrong reasons.

10.     The experiences of this summer have shaken the Darul Amaanah community to its core.  The central mission of Darul Amaanah is to affirm its students' religious and cultural identities, a task undermined by Defendants' patterns of discriminatory conduct and behavior.  As a result of their treatment at Foster Brown, many of the children have come home in tears, shattered by their treatment by City employees and questioning whether their Islamic faith makes them unwelcomed and unwanted.  Some of the children no longer wish to wear their religious clothing – including their headscarves – because they are afraid the City will continue to discriminate against them.

11.     These events have been emotionally and psychologically damaging to the children and their families, not only because of the discriminatory treatment against them but also because of Defendants' ongoing failure to meaningfully respond to their complaints.  Indeed, even after Mayor Purzycki's office finally issued a statement of general apology when one of these incidents went public, the discrimination against Darul Amaanah persisted.  In fact, the Foster Brown staff once again prohibited the children from using the pool just two days after this "apology."  Defendants have given Plaintiffs every reason to believe that they will experience the exact same treatment once the pool season begins again next year.

12.     Plaintiffs call upon this Court's proud history of remedying civil

rights violations and ask it to ensure that these children will not be subjected to

unequal accommodation at the City's public pools again. *See Belton v. Gebhart*,

87 A.2d 862 (Del. Ch. 1952), *aff'd*, 91 A.2d 137 (Del. 1952), *aff'd sub nom. Brown

v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955).

13.     Plaintiffs bring this action to remedy the continuing violation of their

civil rights secured by Article I, Section 1 of the Delaware Constitution; the First

and Fourteenth Amendments to the United States Constitution, pursuant to 42

U.S.C. § 1983; and Titles II and VI of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000(a) and (d).  Simply put, Plaintiffs demand that these children get the fair

and equal opportunity to enjoy the City's pools, free from harassment and

discrimination on the basis of their religion and race, as guaranteed to them by the

constitutions of this state and nation.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the state and federal constitutional

violations alleged herein under 10 *Del. C.* § 341.

15.     As detailed herein, the harm Plaintiffs face – namely, the repeated

violation of their state and federal constitutional rights, and the resulting

psychological and emotional trauma Defendants' discriminatory conduct has

caused these young children – is irreparable and can be adequately remedied only through injunctive relief.

16.    This Court has concurrent jurisdiction with the federal courts to hear claims involving violations of the U.S. Constitution under 42 U.S.C. § 1983.

17.    All of the events giving rise to the claims alleged herein arose in Wilmington, Delaware.  Venue is therefore proper in this Court.

## PARTIES

18.    Plaintiff Darul Amaanah Academy is a nonprofit organization founded in 1997 and based in Wilmington, Delaware.  It provides Islamic classes for children, including Arabic literacy courses.  For the past three years, Darul Amaanah has conducted a youth summer camp aimed at connecting the children with other young local Muslims, engaging them in fun summer activities, and surrounding them with positive role models.

19.    Plaintiff Tahsiyn Ismaa'eel is a resident of Wilmington, Delaware. She is an African American Muslim and serves as the principal of the Darul Amaanah Academy and director of its youth summer camp.  In accordance with her religious beliefs, Tahsiyn Ismaa'eel wears a headscarf with a partial covering of her face.

20.    Plaintiff Iman Ismaa'eel is a resident of Wilmington, Delaware.  Iman Ismaa'eel has two children, W.B., who is twelve years old, and M.B., who is nine

8

years old.  Iman Ismaa'eel and her children are African American Muslims, and her children attend Darul Amaanah's summer camp.  Iman Ismaa'eel brings this action individually and for the benefit of her minor children W.B. and M.B.

21.     Plaintiff Mia Miller is a resident of Wilmington, Delaware.  Ms. Miller has two daughters, Y.A.M.-W., who is six years old, and Y.K.M.-W., who is five years old.  Ms. Miller and her children are African American Muslims, and her children attend Darul Amaanah's summer camp.  Ms. Miller brings this action individually and for the benefit of her minor children Y.A.M.-W. and Y.K.M.-W.

22.     Plaintiff Daewanna Word is a resident of Wilmington, Delaware.  Ms. Word has a daughter, S.W.T., who is ten years old.  Ms. Word and her daughter are both African American Muslims, and her daughter attends Darul Amaanah's summer camp.  Ms. Word brings this action individually and for the benefit of her minor child S.W.T.

23.     Plaintiff Bahjeh Rizeq is a resident of Delaware County, Pennsylvania.  Ms. Rizeq has a daughter, M.A., who is five years old.  Ms. Rizeq and her daughter are Muslim women of Arab descent, and her daughter attends Darul Amaanah's summer camp.  Ms. Rizeq brings this action individually and for the benefit of her minor child M.A.

24.     Plaintiff Tiana Russell is a resident of Wilmington, Delaware.  Ms. Russell has a daughter, S.J., who is twelve years old.  Ms. Russell and her daughter

9

are both African American Muslims, and her daughter attends Darul Amaanah's summer camp.  Tiana brings this action individually and for the benefit of her minor child S.J.

25.     Defendant City of Wilmington is a municipal corporation or political subdivision organized and existing under the laws of the State of Delaware.  Upon information and belief, the City is a recipient of federal financial assistance.

26.     Defendant Wilmington Department of Parks and Recreation is a division of the City of Wilmington.

27.     Defendant Michael S. Purzycki is the Mayor of the City of Wilmington, with supervisory authority over the Parks Department.  He is sued in his official and personal capacities.

28.     Defendant Kevin F. Kelley, Sr. is the Director of the Parks Department, with supervisory authority over all of the officers and operations of the Parks Department.  He is sued in his official and personal capacities.

## FACTUAL ALLEGATIONS

**A.      Darul Amaanah And Its Summer Youth Camp Foster Pride In Its Students' Culture And Islamic Faith.**

29.     Founded in 1997, Darul Amaanah is a nonprofit organization based in Wilmington, Delaware.  Darul Amaanah's mission is to teach local children basic life skills and instill them with pride in their culture and faith.  To that end, Darul

Amaanah enrolls students from preschool to high school and provides classes in both standard curriculum subjects and Islamic studies.

30.    While Darul Amaanah is open to children of all races, religions and genders, it primarily serves the local African American Muslim community.  As such, in addition to providing these children with a safe and positive learning environment, Darul Amaanah encourages its students to cherish their own cultural values and heritage and works to instill them with positive self-esteem.  Students are also taught to develop critical thinking skills and encouraged to become contributing members of their larger Wilmington community.

31.    As part of its goal of instilling confidence and knowledge in its students, Darul Amaanah actively works with its students to educate them about their Islamic faith and strives to create a safe and comfortable environment where they can express their religious beliefs.

32.    For many of Darul Amaanah's students and their parents, one of the core principles of their Islamic religious beliefs is modesty.  That core belief has implications for all aspects of their lives, and they express this modesty by exhibiting humility and respect for others both through their interpersonal interactions and by dressing in a certain manner.  Out of adherence to their religious beliefs, many students at Darul Amaanah wear modest clothing that covers different parts of their bodies in public.  For some students, this may mean

covering their legs by wearing pants or leggings, or covering their arms by wearing a long-sleeve shirt.  For others, it means covering their hair with a headscarf.

33.     For over a decade, Darul Amaanah's members have staunchly advocated for civil rights in Wilmington.  They have volunteered to teach Islamic studies in local prisons, provided free clothing and food to those in need and, for a time, offered transitional housing to women recently released from prison. As part of its efforts, Darul Amaanah has conducted a youth summer camp since 2015. The camp aims to connect the children with other young local Muslims, engage them in fun summer activities, and surround them with positive role models.  Many of the children look forward to this camp all year and view it as the highlight of their summer.  Both the parents and children love having a safe and fun environment where the students can learn, play and receive positive reinforcement about who they are and what they believe.

34.     This year, the Darul Amaanah youth summer camp began on June 11, 2018.  Approximately 25 children, ages five to twelve years old, attended the summer camp.

35.     Tahsiyn Ismaa'eel currently serves as the principal of Darul Amaanah and director of its annual youth summer camp.  In that capacity, she is responsible for overseeing the camp's programming and working with the students enrolled in

the program, as well as with their parents.  In accordance with her religious beliefs,

Tahsiyn Ismaa'eel wears a headscarf with a partial covering of her face.

### B.    The Students Of Darul Amaanah Have Been Repeatedly Subjected To Discriminatory Treatment At Local Swimming Pools.

36.    Foster Brown is located immediately adjacent to and less than 50

yards away from Darul Amaanah's facility.  Students at Darul Amaanah need only

walk out the door and around a chain-link fence to enter the front gate of Foster

Brown.  They do not even need to cross the street.

37.    For the past three years, Tahsiyn Ismaa'eel has taken the students at

Darul Amaanah's annual youth summer camp to local swimming pools operated

and maintained by the City, including Foster Brown.  The pools are staffed by Red

Cross-certified lifeguards, and can be accessed without cost during public

swimming hours.  The City's website lists the location and hours of operation of

five "public swimming pools operated by the City of Wilmington's Parks and

Recreation Department."

38.    The summer 2018 swim season lasts approximately eight weeks,

beginning on June 24 and ending on August 18, 2018.  During the week, Foster

Brown is open to the general public – including Darul Amaanah staff and students

– on Mondays, Thursdays and Fridays.  Accordingly, students at Darul Amaanah

13

should have been permitted to enjoy the pool at Foster Brown no fewer than 24 weekdays during the 2018 swim season.

39.     The time spent at the City's pools is an integral part of the Darul Amaanah summer camp: the students enjoy their time at the pools, and Tahsiyn Ismaa'eel and the other staff rely on the pools as a low-cost, enjoyable activity for the students that provides them with critical water safety skills.  Other summer camps do the same thing.

40.     When the students of Darul Amaanah visit the City's swimming pools, many of them dress modestly, as required by their religious beliefs. Specifically, some of the students cover their legs by swearing pants or leggings, some of them cover their arms with t-shirts or long-sleeved shirts, and some of them cover their hair with a headscarf.  Such clothing does not interfere with the students' ability to swim safely in the pools.[2]

41.     During each of the past three years when Darul Amaanah visited Foster Brown and other City pools dressed in their modest attire, the children swam and enjoyed the facilities without incident.  Many other patrons, including non-Muslim individuals, who swam at Foster Brown and other City pools wear similar clothing items such as t-shirts, tank tops, cutoff jeans and hand-me-downs,

---

[2]   Photographs of the type of clothing worn by Darul Amaanah's students at the pool are attached hereto as Exhibit B.

14

which are often more affordable than traditional swimwear.  Until this summer,

Tahsiyn Ismaa'eel and the other Darul Amaanah staff were not aware of

employees at Foster Brown complaining about what the children – Muslim or

otherwise – were wearing.

42.     However, suddenly and without notice, that changed.  During the

course of this summer, the students of Darul Amaanah have been subjected to

discriminatory treatment at City pools simply because of their religion.

### C.     The First Incident at Foster Brown.

43.     At approximately 3:00 p.m. on June 25, 2018, the very first weekday

of the 2018 swim season, Tahsiyn Ismaa'eel and her staff left the Darul Amaanah

facility with a group of seventeen students to swim at Foster Brown.

44.     Within minutes of their arrival, the Foster Brown manager, Glenda

Pinkett, began to harass the children from Darul Amaanah.  Ms. Pinkett

approached a group of four five- and six-year-old girls wearing headscarves; two

of whom were wearing specially tailored Islamic swimwear made of a stretchy

synthetic material.  Tahsiyn Ismaa'eel, who wears a headscarf with a partial

covering of her face, was supervising the girls.  In a hostile manner and with a

raised voice, Ms. Pinkett told the girls to leave the pool immediately because of

"what they were wearing."  When a Darul Amaanah staff member asked Ms.

Pinkett what she meant, Ms. Pinkett pointed specifically at the girls wearing

headscarves and said "they can't wear all that."

45.     Tahsiyn Ismaa'eel explained to Ms. Pinkett that the children were

wearing a combination of t-shirts, leggings and headscarves in accordance with

their religious beliefs, but that she would inform their parents of Ms. Pinkett's

concerns.  Tahsiyn Ismaa'eel informed Ms. Pinkett that the children of Darul

Amaanah had worn such clothing for years at Foster Brown without issue.  She

also observed that many of the children at the pool who were not with Darul

Amaanah were wearing similar clothing like t-shirts, leggings and cutoff jeans, but

were not disturbed by the Foster Brown staff or asked to exit the pool as a result of

their clothing.

46.     In response, Ms. Pinkett continued to insist that the children would

have to leave the pool while in "those clothes."  Tahsiyn Ismaa'eel asked Ms.

Pinkett and the other Foster Brown staff if they could identify any specific policy

banning such clothing and requiring the children's removal from the pool.  When

they could not, Tahsiyn Ismaa'eel noted to Ms. Pinkett that no such policy was

included in the rules posted publicly at Foster Brown.

47.     During the incident, Plaintiff Bahjeh Rizeq, whose daughter M.A. was

forced to leave the pool, also asked Ms. Pinkett why her child was being targeted.

Ms. Pinkett informed Ms. Rizeq that it was "because of what she's wearing" and

"clothes like that," pointing to her headscarf.  When Ms. Rizeq informed Ms.

Pinkett that her daughter wore those clothes out of her religious beliefs and had

never had problems with wearing them at Foster Brown over the years, Ms. Pinkett

responded, "Not anymore.  I'm the new manager now."

48.     After demanding that the girls leave the pool, Ms. Pinkett continued to

patrol the outside of the pool and to speak loudly to other patrons about the

children's clothing, pointing to the Darul Amaanah students.  Ms. Pinkett referred

to the students as "the Muslims," made derogatory comments about them to other

patrons and gestured with her hands around her face and head to mimic their

headscarves.

49.     Five to ten minutes after Ms. Pinkett asked the Darul Amaanah girls

to exit the pool, the Foster Brown staff contacted a Wilmington police officer

sitting in a patrol car outside of Foster Brown and requested her assistance.

Although police officers frequently patrol the vicinity around City pools, they

rarely exit their patrol vehicles or enter pool facilities.

50.     The uniformed police officer then entered the facility and asked a

member of Darul Amaanah's staff when their group would be leaving.  The officer

also informed Tahsiyn Ismaa'eel that "there are people waiting to get in and

waiting for you to leave."  Tahsiyn Ismaa'eel found the officer's behavior

upsetting and puzzling because, as she noted to her, another group of young

17

campers had been at Foster Brown for a longer period of time and were not asked to leave.  Further, Foster Brown did not appear overcrowded, and it did not appear that another group of patrons was waiting to enter.

51.    Upon information and belief, neither the police officer nor Foster Brown staff asked any other patrons to exit the pool that day during its operational hours.  In addition, another patron at Foster Brown noted to a staff member of Darul Amaanah that when she was at Foster Brown the day before, swimmers were allowed to swim in whatever clothing they wanted.

52.    Deeply upset by how they were being treated and feeling like they had no other choice, Tahsiyn Ismaa'eel, her staff and the Darul Amaanah students felt compelled to leave Foster Brown around 3:45 p.m., just 45 minutes after arriving. Many of the children who witnessed these events were also upset and confused. The four students forced out of the pool included Y.A.M.-W. and Y.K.M.-W., both of whom are preschool-aged African American Muslim girls, and M.A., who is a five-year old Muslim girl of Arab descent.

**D.    Complaints About The First Incident Go Unresolved.**

53.    The night of June 25, Tahsiyn Ismaa'eel emailed Director Kelley about Darul Amaanah's experience at Foster Brown.  Director Kelley telephoned Tahsiyn Isma'eel and told her that he would get it "straightened out."

54.     The next day, on June 26, Tahsiyn Ismaa'eel sent a follow-up email to

Director Kelley describing the June 25, 2018 incident.  Her complaint stated, in

part:

> I'm writing to express our concern over the unprofessional way our
> camp was treated by Ms. Glenda Pinkett at Brown pool Monday June
> 25th.  Ms. Pinkett harassed my staff from the time we entered the pool
> until we finally left.  In fact, the unprofessional way in which our
> group was talked about to other patrons at the pool made me so
> uncomfortable that, I decided to cut our outing short and leave all
> together.
>
> We have been utilizing Brown pool for four years.  We have never
> experienced staff that was as rude and unprofessional as Ms. Pinkett.
> No one should be made to feel unwelcomed at a City owned public
> facility.
>
> I personally feel that our campers were discriminated against because
> the entire time that Ms. Pinkett harassed us, another camp was
> allowed to enjoy the pool area freely without being talked about or
> harassed.[3]

55.     Additionally, Plaintiff Daewanna Word, whose ten-year old daughter

S.W.T. was present at Foster Brown the day before, sent an email to the City about

her concerns over the June 25 incident.  Her email, which had the subject line

"Discrimination," stated:

> I'm writing this formal complaint on behalf of Duraal Ameenah
> Islamic Summer Camp located at People Settlement on 8th and
> Lomabard St. My 10 year old Daughter who attends the camp for the
> summer had experience discrimination along with the other campers ,
> when they went for a swim at Fletcher Brown Swimming Pool located

---

[3]    A copy of this email is attached hereto as Exhibit C.

on 7th and Lombard on Monday June 25,2018. The swimmers were told they could not wear their attire inside the pool or nothing but a bathing suit. As Muslim women , girls we cover our body's no matter what activities we are engaging in , and it should be an except religion wise that Muslims be allowed to wear covering inside the pool. For example tights , shorts , head covering , and long sleeve shirt should be permissible for people with religion reasons. No one should feel like the can't still be themselves when visiting a public pool. Our children should not have to be force to wear a bathing suit which is not permissible for our girls religion wise . Our campers we also asked numerous times when were they leaving though out their time swimming. For my ten year old to come home and tell me that the people at the pool didn't like them because they were Muslim is unexpectable. I'm very upset along with other parents and feel as if our children should be treated the same as everyone else who wants to come swim at a public city pool . I look forward to hearing from you and hope we can resolve this issue without having take it any further.[4]

56.    Ms. Word was asked to provide a contact number because "Director Kelley would like to speak with you," which she provided, but Ms. Word never heard from Director Kelley or anyone else from the City concerning the June 25 incident.

**E.    The Second Incident at Foster Brown.**

57.    The June 25 incident was not an isolated occurrence.

58.    June 28, 2018 was the very next day that Foster Brown was open to the public and Darul Amaanah for swimming.  That day, Tahsiyn Ismaa'eel again took a group of students to Foster Brown to go swimming in the afternoon.

---

[4]    A copy of this email is attached hereto as Exhibit D.

However, shortly after their arrival, and just as Darul Amaanah students were beginning to enter the pool, Ms. Pinkett again approached a group of four five- and six-year old girls in the water, who were being supervised by Tahsiyn Ismaa'eel. This time, however, Ms. Pinkett reached around Tahsiyn Ismaa'eel to tap the young students on the shoulders and rudely informed them that they had to get out of the pool.  Tahsiyn Ismaa'eel felt physically intimidated and the entire group left the pool shortly thereafter.

59.     Tahsiyn Ismaa'eel then called Director Kelley and reported that Darul Amaanah was being harassed yet again at Foster Brown.  Shortly after, Director Kelley and Shawn Baker, program director of the Parks Department, arrived at Foster Brown.  After a discussion with Foster Brown staff and Tahsiyn Ismaa'eel, Director Kelley said that "the kids can swim today."  Director Kelley told Darul Amaanah that his office would schedule a parent meeting in the coming days.

60.     As Darul Amaanah prepared to leave Foster Brown for the day, a lifeguard whom Tahsiyn Ismaa'eel has known for years told her that the students were being removed from the pool "because the cotton" they were wearing "clogs the filtration system."  This was the first time that Tahsiyn Ismaa'eel or the Darul Amaanah staff had been told that the "cotton" the students were wearing was an issue.

### F.      The Third Incident at Foster Brown.

61.      After receiving assurance from Director Kelley that Darul Amaanah students could swim at Foster Brown, Darul Amaanah staff and students arrived at Foster Brown the very next day for an afternoon swim.  But again, the Foster Brown staff targeted children at Darul Amaanah for wearing "cotton" clothing, while leaving other swimmers wearing cotton undisturbed.  An email from Tahsiyn Ismaa'eel to Director Kelley described an increasingly tense and hostile confrontation:

> Ms. Pinkett appeared to be antagonistic as she walked very close to me between myself and campers several times early in our visit to the pool.  Then as we began to leave the pool, Ms. Pinkett approached me to reiterate that the City would be enforcing the "No cotton" rule for swim wear in the pool.  When I casually informed her that you were meeting with the parents that evening, she became irritated.  She, once again, more forcefully, repeated that swimmers would no longer be allowed to get in the pool while wearing cotton.  I once again reiterated that this is a matter for the parents.  She got louder.  At this point I asked her, 'Can't we just be professional about this?'  She belligerently responded, 'We can be professional, we can talk like grown women!'  Feeling shocked and threatened, I said, 'Please don't talk to me.'  At this point, Ms. Pinkett got in my face and more loudly stated, 'I can talk to you if I want to.'  It was at this point, feeling more afraid, I quickly gathered my campers and left the pool grounds.  Still feeling uneasy about the harassment I had just suffered for a third time in less than two weeks, I complained to you in the meeting with the parents.[5]

---

[5]   A copy of this email is attached hereto as Exhibit E.

62.     Despite Tahsiyn Ismaa'eel's attempts to deescalate the situation and
shield her campers from any hostility she received from Ms. Pinkett, a group of
young campers witnessed this exchange and became fearful.  Yet again, Darul
Amaanah staff felt forced to gather the students and leave the pool.

### G.     Director Kelley Doubles Down On The City's Purported "No Cotton" Policy.

63.     After receiving numerous phone calls and emails from Darul
Amaanah staff and parents, Director Kelley and Mr. Baker finally agreed to meet
with some of the parents on June 29, 2018.  That night, Director Kelley and Mr.
Baker met with Darul Amaanah staff and parents at the Darul Amaanah facility.
At the meeting, the parents explained that the clothing their children wore was to
comply with their religious beliefs.  The parents stated that they had visited Foster
Brown and other City pools for years and had never heard of a "no cotton" policy.
The parents noted that there were many other children wearing cotton-based
clothing, including prohibited cutoff jeans, and the pool staff had not removed
those children from the pool.  They also expressed their fears for the safety of their
children at Foster Brown, particularly given the escalating hostility from the staff.

64.     In response, Director Kelley and Mr. Baker repeatedly praised Ms.
Pinkett as an "excellent" employee.  Director Kelley also refused to address any of
the specific incidents raised by the Darul Amaanah staff and parents, including Ms.

Pinkett's hostile behavior.  Director Kelley doubled down on the "no cotton"

policy, contending that cotton-based clothing affects the pool's filtration system

and presents a safety issue because "the fabric could become heavy and make the

hijab [headscarf] unsafe."

65.     When pushed by Darul Amaanah staff and parents, Director Kelley

conceded that the City does not have a written "no cotton" policy.  Rather, at the

meeting, Director Kelley presented a sign identical to those posted at all City

pools, which stated that patrons must wear "proper attire," and that "cutoff jeans"

are prohibited.

66.     At the conclusion of the meeting, Director Kelley agreed to let the

Darul Amaanah students wear cotton-based clothing until he formally "updated"

the policy to reflect the "no cotton" policy in writing.

67.     July 2, 2018 was the next weekday that Foster Brown was open to the

public following the meeting with Director Kelley and Mr. Baker.  The children

went to the pool that day and swam.  It was the only day throughout the entire

2018 pool season that the Darul Amaanah children swam at Foster Brown without

incident.

**H.      The Fourth Incident at Foster Brown.**

68.      On July 5, 2018, Tahsiyn Ismaa'eel and the children of Darul

Amaanah returned to the pool.  Incredibly, Ms. Pinkett again informed Tahsiyn

Ismaa'eel that the children at Darul Amaanah could not swim due to their clothing.

69.      The following day, Tahsiyn Ismaa'eel emailed Director Kelley.[6]

Director Kelley responded that until new signs are installed, the children could

swim.

**I.       The Fifth Incident at Foster Brown.**

70.      Only four days later, on July 9, 2018, Foster Brown staff yet again

raised the purported "no cotton" policy as soon as the children of Darul Amaanah

arrived at the pool.  That day, the City's aquatics director – who rarely visits City

pools – was at Foster Brown when Darul Amaanah arrived.  The aquatics director

informed the group that the "no cotton" policy would continue to be enforced

going forward.

71.      That evening, Tahsiyn Ismaa'eel sent another email to Director

Kelley.[7]  Tahsiyn Ismaa'eel's email noted, "Unfortunately, in spite of your

assurance that swimmers could swim in cotton for now … we were harassed again

today regarding two of our preschoolers wearing cotton in the pool. … I hope we

---

[6]   *See* Exhibit E.

[7]   A copy of this email is attached hereto as Exhibit F.

can get to the bottom of this ongoing harassment."  Director Kelley did not respond to Tahsiyn Ismaa'eel's email.

### J.    The Sixth Incident at Foster Brown.

72.    Later that week, the Darul Amaanah students were temporarily permitted to swim at Foster Brown.  One of the children from Darul Amaanah, a five-year old girl, was struggling to swim in the pool as some older kids splashed her with water.  Despite her cries for help, the lifeguard on duty initially refused to intervene.  After several minutes, the lifeguard jumped into the water to help her. Darul Amaanah staff later heard the lifeguard complaining to another patron that she "had to jump in to get one of *their* kids," referring to and gesturing toward Darul Amaanah.

73.    Upset about this continuous mistreatment from the staff and no longer feeling safe, the Darul Amaanah group gathered their belongings and left the pool.

### K.    Mayor Purzycki Issues a Public Statement.

74.    On July 14, 2018 – after receiving multiple written complaints from Darul Amaanah staff and parents reporting the discriminatory treatment the group received at Foster Brown – Mayor Michael Purzycki finally issued a written

statement through his deputy chief of staff for policy and communication, John

Rago.[8]

75.    Like Director Kelley, Mayor Purzycki's statement defended the "no

cotton" policy, noting that cotton garments are a safety concern because cotton is

absorbent and can become heavy when it gets wet.  The statement stated, in part,

that "[t]here are city rules and regulations designed to ensure the safety of those

who use the pools.  One of the rules requires that all swimmers wear proper

swimming attire."  Mayor Purzycki's statement also noted that cotton is harmful to

pool filtration systems.  According to Mr. Rago, new signage at the pool will read:

"Swimmers must wear proper swimwear (swimwear composed of Nylon, Lycra,

Spandex, and Polyester is permitted, but cotton and wool clothes are not

permitted)."  After the statement was issued, Mayor Purzycki's office declined to

be interviewed by the press about the incidents at Foster Brown.

76.    In response to escalating public outcry about the treatment of the

children at Darul Amaanah, Mayor Purzycki's office issued a follow-up statement

later that day.[9]  The press release conceded that the City used poor judgment in its

reaction to the incidents at Foster Brown and that the City should be held

accountable for what happened.  Specifically, the statement admitted that "[w]e

---

[8]    *See* Exhibit A.

[9]    A copy of the press release is attached hereto as Exhibit G.

should be held accountable for what happened and how poorly we assessed this incident," and acknowledged that the children's clothing stemmed from their religious beliefs, and that the "vaguely-worded pool policies" to which his office had previously referred had been used to justify "our poor judgment."

77.    Despite receiving numerous written complaints from Darul Amaanah staff and parents, Defendants have never issued a personal apology to Plaintiffs.

**L.    The Seventh Incident at Foster Brown.**

78.    On July 16, 2018, just two days after Mayor Purzycki's office issued a public statement purporting to "reaffirm[] the City's long-standing policy that all people are welcome at city pools," Foster Brown staff again prevented the children of Darul Amaanah from accessing the pool.

79.    That day, as Tahsiyn Ismaa'eel walked up to the pool with the Darul Amaanah students, a Foster Brown staff member ran to close the gate.  The staff member informed Tahsiyn Ismaa'eel that the pool was "at capacity" and that her group could not enter.  Although she had never heard of this happening to any other group, Tahsiyn Ismaa'eel tried to be accommodating and said she and the children would wait outside until other patrons left.  After several minutes, approximately five patrons exited, and the entire Darul Amaanah group (which exceeded five people) was allowed to enter the facility.  Yet, as soon as they

entered and before they could get in the water, pool staff announced that Foster Brown was closed due to a "medical emergency."

80.    As patrons were leaving, one individual told Tahsiyn Ismaa'eel that "we all have to leave because of you guys."  Another patron, a school-aged boy, was overheard saying that he was angry that the pool had been closed "because the Muslims came in."  Feeling humiliated and hurt, Tahsiyn Ismaa'eel gathered her children and left.  A patron who stayed at the pool informed Tahsiyn Ismaa'eel later that Foster Brown reopened moments after the Darul Amaanah children left.

81.    Tahsiyn Ismaa'eel's husband subsequently received a phone call from Mr. Rago to discuss the July 16, 2018 incident.  During their discussion, Mr. Rago told Tahsiyn Ismaa'eel's husband that the pool had been closed for cleaning.  Mr. Rago did not mention any "medical emergency" at Foster Brown on July 16, 2018.

82.    Although the children at Darul Amaanah see Foster Brown from its classrooms and backyard every day of camp, the group has not returned to that pool since July 16, 2018 because they fear further harassment and discrimination against them.

## M.    Defendants Fail To Meaningfully Respond Or Take Steps To Address The Discrimination.

83.    As explained above, from June 25 to the present, the staff and parents of Darul Amaanah have repeatedly raised their concerns with senior City officials

concerning the mistreatment the group received at Foster Brown.  Indeed, after the

incidents, Darul Amaanah staff and parents sent written complaints to Mayor

Purzycki, the City's Parks Department and Director Kelley.  Each of these

complaints explained that the children at Darul Amaanah were being targeted for

the clothing required of them by their religious beliefs and denied equal access to

the City's public swimming pools.

84.     Despite Plaintiffs' repeated pleas for help, Defendants have

consistently failed to meaningfully respond to or remedy their mistreatment of the

children at Darul Amaanah.  Instead, Defendants have provided shifting and

plainly pretextual explanations for the purported "no cotton" policy, while also

offering sweeping support for both the discriminatory application of the vaguely-

worded pool rules and the derogatory behavior of Foster Brown's staff.

85.     Moreover, even after some Darul Amaanah parents tried to

accommodate Foster Brown's "concerns" by dressing their children in clothing

made of synthetic materials like Spandex, Foster Brown staff informed the students

that they could not be in the pool "dressed like that" and ordered them to

immediately get out of the pool.

86.     Further still, Foster Brown staff continued to maintain support for the

purported "no cotton" policy after Mayor Purzycki's office issued its apology

statements on July 14, 2018.  On July 16, 2018, Ms. Pinkett told the Delaware

News Journal, "Nobody was discriminated. … They have a group of young girls that was dressed in inappropriate attire, covered.  You can be covered.  That's fine. You just can't wear cotton."  While she "acknowledged there is no written policy against wearing cotton in public pools," Ms. Pinkett reiterated that she would still enforce it anyway.

87.     On July 19, 2018, as a result of Defendants' lack of meaningful response, Darul Amaanah, through its counsel, sent a letter to Mayor Purzycki and Director Kelley highlighting the ongoing discrimination at Foster Brown and calling on them to initiate an investigation, enact written policies with training protocols to ensure that all City employees do not engage in further discriminatory conduct and immediately remedy the harm to the Darul Amaanah community.[10] The letter requested that Mayor Purzycki and Director Kelley respond by July 27, 2018.

88.     On July 20, 2018, Mayor Purzycki's office released another public statement about the incidents at Foster Brown, stating that his office was taking the allegations and the cease-and-desist letter "very seriously," and the City had already launched an investigation into the incidents.

89.     Neither Mayor Purzycki nor Director Kelley directly responded to Darul Amaanah or their counsel on or before July 27, 2018.  Rather, on July 31,

---

[10]   A copy of this letter is attached hereto as Exhibit H.

2018, the City's Senior Assistant City Solicitor sent a two-sentence acknowledgment of the letter's receipt.[11]

90.     Finally, on August 14, 2018, counsel for Plaintiffs contacted Mayor Purzycki's office, offering to meet with Mayor Purzycki in advance of filing this lawsuit.[12]  The Mayor's office did not accept Plaintiffs' counsel's offer for a meeting or provide a substantive response to any of the concerns Plaintiffs had raised.  Instead, the Mayor's office responded that an investigation "related to the use of Dr. Foster M. Brown Community Pool" was "underway" but "not yet complete," and that "[a]fter the conclusion of the investigation and before the next outdoor swim season, the City intends to review its practices and policies for its pools and will notify the public accordingly."

91.     Thus, Defendants continue to fail to provide any meaningful response to the repeated complaints about discriminatory treatment by the Darul Amaanah staff and parents.

**N.     Plaintiffs Have Suffered Significant Harm As A Result Of Defendants' Discrimination.**

92.     For the children of Darul Amaanah, summer camp is special.  All year, the children look forward to this opportunity to make new friends, learn new

---

[11]   A copy of this response is attached hereto as Exhibit I.

[12]   A copy of this email is attached hereto as Exhibit J.

things and enjoy fun activities together.  Their parents also look forward to this

unique chance for their children to socialize with other young Muslims and grow in

both their faith and self-respect.  Defendants' pattern of hostility and

discriminatory treatment, which fits into a long history of discrimination at

swimming pools, has ruined this experience.

93.     Defendants' actions have compromised Plaintiff Darul Amaanah's

ability to successfully organize its annual summer camp and to assist its students to

grow in their faith.  The Darul Amaanah students' self-esteem has been

compromised.  Members of the Darul Amaanah staff have been emotionally and

psychologically harmed not only by the mistreatment they have suffered at the

hands of the municipal staff at Foster Brown, but also by Defendants' failure to

meaningfully respond to their numerous complaints and grievances.

94.     The parents of the Darul Amaanah students have also been harmed by

Defendants' actions.  For example, Plaintiff Bahjeh Rizeq, the mother of five-year

old M.A., has for years driven her daughter from their home, located 45 minutes

away, to Darul Amaanah's summer camp so that M.A. will have the opportunity to

be in an environment where she can feel safe and proud to express herself fully,

including in her religious identity.  Yet, because of Defendants' actions, Ms. Rizeq

has been unable to restore her daughter's shaken self-confidence.

95.     Plaintiff Mia Miller, the mother of Y.A.M.-W. and Y.K.M.-W., remains worried about the impact that Defendants' conduct has had on her children, who still get scared and upset when talking about the pool. She is also worried that her daughters, both of whom have special needs, will not learn critical water safety skills.

96.     Plaintiff Iman Ismaa'eel, the mother of twelve-year old W.B. and nine-year old M.B., grew up in Wilmington and spent her own childhood going to the City's public pools and covering herself according to her religious beliefs without any issue. She is greatly pained and saddened that her own children are unable to enjoy the same experiences at Foster Brown.

97.     Iman Ismaa'eel has expressed that Defendants have made her and her community feel "small, unimportant and paranoid." As contributing members of the Wilmington community, this is unacceptable.

98.     The harm the children have faced is even greater. For example, Y.A.M.-W. and Y.K.M.-W., who are six and five years old, respectively, are scared to go back to the pool. Although summer camp is typically their favorite part of the year – they particularly love playing with friends and learning new activities and skills – they now ask their mother, Plaintiff Mia Miller, if they will be forced to leave if they go back to the pool and cry when they remember how they were targeted by City employees.

99.    Other children at Darul Amaanah have expressed similar concerns. M.A., who is five years old and was prohibited from swimming at Foster Brown because she was wearing a t-shirt, tights, and headscarf over her bathing suit, has repeatedly told her mother, Plaintiff Bahjeh Rizeq, that she and her friends cannot go back to the pool because "they don't like Muslims."

100.    Similarly, S.W.T., the ten-year old daughter of Plaintiff Daewanna Word, remains fearful about returning to the pool, and has told her mother that she is scared to go back because "can't they just put us out again?"

101.    As a result of this discrimination, ever since June 25, a number of Darul Amaanah's young girls have stopped wearing their headscarves when they go to other pools to swim.  Although they used to be proud to wear their headscarves at all times, they have told Tahsiyn Ismaa'eel and their parents that they have stopped covering their heads "so they could go in the pool."  The Darul Amaanah children should not be forced to choose between complying with their religious beliefs and swimming with their friends.  And no child should be made to feel shame for his or her religious beliefs.

102.    In short, Defendants' discriminatory conduct has deprived the children at Darul Amanaah of access to the pool for an entire summer.  These children deserve better and to be made whole.

## CLAIMS FOR RELIEF

### COUNT I
### Delaware Constitution, Art. 1 § 1
### (Violation of the Free Exercise Clause Against All Defendants)

103.   Plaintiffs incorporate by reference each of the allegations contained in

the preceding paragraphs.

104.   Article 1 Section 1 of the Delaware Constitution provides:

> [N]o person shall or ought to be compelled to attend any religious
> worship, to contribute to the erection or support of any place of
> worship, or to the maintenance of any ministry, against his or her own
> free will and consent; and no power shall or ought to be vested in or
> assumed by any magistrate that shall in any case interfere with, or in
> any manner control the rights of conscience, *in the free exercise of
> religious worship*, nor a preference given by law to any religious
> societies, denominations, or modes of worship.

(emphasis added).

105.   Defendants' policy of harassing and prohibiting individuals who are

Muslim from freely exercising their religion violates Plaintiffs' rights under Article

1 Section 1 of the Delaware Constitution.

### COUNT II
### 42 U.S.C. § 1983
### (Violation of the Free Exercise Clause of the First Amendment Against All
### Defendants)

106.   Plaintiffs incorporate by reference each of the allegations contained in

the preceding paragraphs.

107.   The actions taken by Defendants under the color of state law had the effect of knowingly depriving Plaintiffs the rights secured to them under the First Amendment by prohibiting them from the free exercise of their religion.

108.   Despite receiving multiple complaints from Plaintiffs about their inability to use the pool on the basis of their religion, Defendants failed to properly train, supervise and discipline its employees, amounting to deliberate indifference to the violation of Plaintiffs' federally protected rights.

109.   Defendants' restrictions on Plaintiffs' ability to exercise their religion is not narrowly tailored to further a compelling government interest.  Nor is there a rational basis upon which Defendants may justify their conduct, especially given that Muslims have been wearing cotton-based clothing in City pools for years without incident.

**COUNT III**
**42 U.S.C. § 1983**
**(Violation of the Equal Protection Clause of the Fourteenth Amendment Against All Defendants)**

110.   Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

111.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees the people equal protection of the laws.

112.    Acting under color of state law, Defendants have deprived Plaintiffs of their rights to equal protection of the laws on the basis of Plaintiffs' race, religion and national origin.

113.    These constitutional abuses are directly and proximately caused by Defendants' policies, practices and/or customs, including:  (a) targeting Plaintiffs for discriminatory treatment at Foster Brown on the basis of Plaintiffs' race, religion and/or national origin, (b) the discriminatory failure to adequately and properly screen, train, support and/or supervise City employees working at Foster Brown and other City pools and (c) the discriminatory failure to adequately and properly respond and investigate concerns raised by Plaintiffs and other members of the Wilmington community.

114.    As a direct and proximate result of Defendants' practices, Plaintiffs have been deprived of their right to Equal Protection of the law under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

**COUNT IV**
**Title II, 42 U.S.C. § 2000a**
**(Discrimination in Public Accommodations – Individual Plaintiffs Against Defendants City and Parks Department)**

115.    Plaintiffs incorporate by reference each of the allegations contained in the preceding paragraphs.

38

116.   Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of any place of public accommodation … without discrimination or segregation on the ground of race, color, religion or national origin."

117.   The public swimming pools operated by Defendants City and Parks Department, including, but not limited to, Foster Brown, are places of public accommodation under Title II of the Civil Rights.

118.   Upon information and belief, Defendant Foster Brown is an entity that affects interstate commerce.

119.   Plaintiffs are African Americans and Arab Americans.  They are also Muslim and, as part of their religious beliefs, cover portions of their body and face when in public.

120.   Acting under color of state law, Defendants have deprived Plaintiffs of their rights to the full enjoyment of a place of public accommodation on the basis of Plaintiffs' race, religion and national origin.

121.   This discriminatory treatment is directly and proximately caused by Defendants' policies, practices and/or customs, including:  (a) targeting Plaintiffs for discriminatory treatment at Foster Brown on the basis of Plaintiffs' race, religion and/or national origin, (b) the discriminatory failure to adequately and

39

properly screen, train, support and/or supervise City employees working at Foster

Brown and other City pools and (c) the discriminatory failure to adequately and

properly respond and investigate concerns raised by Plaintiffs and other members

of the Wilmington community.

122.   As a direct and proximate result of Defendants' practices, Plaintiffs

have been deprived of their rights in violation of Title II.

**COUNT V**
**Title VI, 42 U.S.C. § 2000d**
**(Intentional Race Discrimination in**
**Federally Funded Programs – Individual Plaintiffs Against Defendants City**
**and Parks Department)**

123.   Plaintiffs incorporate by reference each of the allegations contained in

the preceding paragraphs.

124.   Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, provides:

"No person in the United States shall, on the ground of race, color, or national

origin, be excluded from participation in, be denied the benefits of, or be subjected

to discrimination under any program or activity receiving Federal financial

assistance."

125.   Upon information and belief, Defendants City and Parks Department

are recipients of federal financial assistance.

126.    By being repeatedly denied equal access to the pool on the basis of their race, national origin and religion, Plaintiffs were treated less favorably than other pool patrons.

127.    Despite knowledge of the discrimination against Plaintiffs and adequate opportunity to remedy it, Defendant Parks Department adopted and approved the acts, omissions and misconduct of the Foster Brown staff that led to discrimination against Plaintiffs.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request that the Court enter an order:

A.    Declaring that Defendants' conduct has deprived Plaintiffs of their rights under Article I of the Delaware Constitution, the First and Fourteenth Amendments to the United States Constitution and Titles II and VI of the Civil Rights Act of 1964, §§ 2000(a) and (d);

B.    Extending the 2019 pool season at all Wilmington public pools to begin by June 1, 2019 and end no earlier than September 1, 2019, and requiring Foster Brown to be open each weekday to the children of Darul Amaanah to compensate the children of Darul Amaanah for the time lost in the pool during the 2018 pool season as a result of Defendants' discriminatory conduct;

C.    Preliminarily and permanently enjoining Defendants from adopting, implementing, enforcing or applying, in a discriminatory manner, any formal or

41

informal rule or policy that prohibits Plaintiffs and any other patrons from wearing cotton-based clothing in Wilmington public pools, unless there is an explicit exception for attire of any material worn for religious reasons, including headscarves or any clothing worn for modesty;

D.       Requiring Defendants to adopt and implement a training program for all employees of Wilmington public pools to educate such employees regarding any and all formal and informal rules or policies in place and any necessary exceptions to such rules or policies for religious reasons, and to provide appropriate supervision of such program;

E.       Requiring Defendants to post conspicuous signs at all Wilmington public pools stating that Defendants and employees of all Wilmington public pools are not permitted to engage in discriminatory and/or harassing conduct on the basis of religion;

F.       Awarding damages to Plaintiffs as a remedy for all harm resulting from Defendants' actions;

G.       Awarding Plaintiffs' counsel reasonable attorneys' fees and litigation costs, including, but not limited to, fees, costs and disbursements under 42 U.S.C. § 1988; and

H.   Granting such other and further relief as this Court deems just and

equitable.

**OF COUNSEL:**

Johnathan J. Smith
Juvaria S. Khan
Nimra H. Azmi
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C.  20043
(202) 897-1897


DATED:  August 22, 2018

Cliff C. Gardner (ID No. 5295)
Matthew P. Majarian (ID No. 5696)
Bonnie W. David (ID No. 5964)
Kaitlin E. Maloney (ID No. 6304)
Haley S. Stern (ID No. 6349)
920 North King Street
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Attorneys for Plaintiffs*

43

# TAB 2

**EFiled:  Aug 22 2018 12:15PM EDT
Transaction ID 62371814
Case No. 2018-0618-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DARUL AMAANAH ACADEMY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 2018-____-____ |
| | ) |
| CITY OF WILMINGTON, WILMINGTON | ) |
| PARKS AND RECREATION | ) |
| DEPARTMENT, MAYOR MICHAEL S. | ) |
| PURZYCKI, in his official and personal | ) |
| capacities, and KEVIN F. KELLEY, SR., in | ) |
| his official and personal capacities, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION OF TAHSIYN ISMAA'EEL

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss. |
| COUNTY OF NEW CASTLE | ) |

I, Tahsiyn Ismaa'eel, being duly sworn, hereby depose and say as follows:

I am authorized to make this verification on behalf of Darul Amaanah Academy and on behalf of myself.

I have reviewed the Verified Complaint, and declare that the matter contained therein, insofar as it concerns my and Darul Amaanah Academy's acts and deeds, is true, and insofar as it relates to the acts and deeds of any other person, I believe it to be true.

Tahsiyn Ismaa'eel

SWORN TO AND SUBSCRIBED before me
this 7th day of August, 2018.

Notary Public

ZANETA R. SAUNDERS
MY COMMISSION
EXPIRES
JAN. 16, 2022
NOTARY PUBLIC
STATE OF DELAWARE

2

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DARUL AMAANAH ACADEMY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 2018-____-____ |
| | ) |
| CITY OF WILMINGTON, WILMINGTON | ) |
| PARKS AND RECREATION | ) |
| DEPARTMENT, MAYOR MICHAEL S. | ) |
| PURZYCKI, in his official and personal | ) |
| capacities, and KEVIN F. KELLEY, SR., in | ) |
| his official and personal capacities, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION OF IMAN ISMAA'EEL

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss. |
| COUNTY OF NEW CASTLE | ) |

I, Iman Ismaa'eel, being duly sworn, hereby depose and say as follows:

I have reviewed the Verified Complaint, and declare that the matter contained therein, insofar as it concerns my and my minor children's acts and deeds, is true, and insofar as it relates to the acts and deeds of any other person, I believe it to be true.

Iman Ismaa'eel

SWORN TO AND SUBSCRIBED before me
this 17th day of August, 2018.

Notary Public

2

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

DARUL AMAANAH ACADEMY, et al.,   )
      )
        Plaintiffs,   )
      )
      v.   )   C.A. No. 2018-____-____
      )
CITY OF WILMINGTON, WILMINGTON   )
PARKS AND RECREATION   )
DEPARTMENT, MAYOR MICHAEL S.   )
PURZYCKI, in his official and personal   )
capacities, and KEVIN F. KELLEY, SR., in   )
his official and personal capacities,   )
      )
        Defendants.   )

## <u>VERIFICATION OF MIA MILLER</u>

STATE OF DELAWARE     )
       ) ss.
COUNTY OF NEW CASTLE    )

I, Mia Miller, being duly sworn, hereby depose and say as follows:

I have reviewed the Verified Complaint, and declare that the matter contained therein, insofar as it concerns my and my minor children's acts and deeds, is true, and insofar as it relates to the acts and deeds of any other person, I believe it to be true.

Mia Miller

SWORN TO AND SUBSCRIBED before me
this ⟨17th⟩ day of August, 2018.

Notary Public

ZANTE R SAUNDERS
MY COMMISSION
EXPIRES
JAN. 16, 2022
NOTARY PUBLIC
STATE OF DELAWARE

**EFiled:  Aug 22 2018 12:15PM EDT
Transaction ID 62371814
Case No. 2018-0618-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DARUL AMAANAH ACADEMY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-_____-_____ |
| | ) | |
| CITY OF WILMINGTON, WILMINGTON | ) | |
| PARKS AND RECREATION | ) | |
| DEPARTMENT, MAYOR MICHAEL S. | ) | |
| PURZYCKI, in his official and personal | ) | |
| capacities, and KEVIN F. KELLEY, SR., in | ) | |
| his official and personal capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFICATION OF ~~NADIRAH SALAAM~~ Daewanna Word D. 3r.

|  |  |  |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) ss. | |
| COUNTY OF NEW CASTLE | ) | |

I, ~~Nadirah Salaam~~ *Daewanna Word D. 3r.*, being duly sworn, hereby depose and say as follows:

I have reviewed the Verified Complaint, and declare that the matter

contained therein, insofar as it concerns my and my minor child's acts and deeds,

is true, and insofar as it relates to the acts and deeds of any other person, I believe

it to be true.

~~Nadirah Salaam~~

Daewanna Wod

D.3N.

SWORN TO AND SUBSCRIBED before me
this 17ᵗʰ day of August, 2018.

Notary Public

**EFiled:  Aug 22 2018 12:15PM EDT
Transaction ID 62371814
Case No. 2018-0618-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DARUL AMAANAH ACADEMY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   C.A. No. 2018-_____-_____ |
| | ) |
| CITY OF WILMINGTON, WILMINGTON | ) |
| PARKS AND RECREATION | ) |
| DEPARTMENT, MAYOR MICHAEL S. | ) |
| PURZYCKI, in his official and personal | ) |
| capacities, and KEVIN F. KELLEY, SR., in | ) |
| his official and personal capacities, | ) |
| | ) |
| Defendants. | ) |

## <u>VERIFICATION OF BAHJEH RIZEQ</u>

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss. |
| COUNTY OF NEW CASTLE | ) |

I, Bahjeh Rizeq, being duly sworn, hereby depose and say as follows:

I have reviewed the Verified Complaint, and declare that the matter contained therein, insofar as it concerns my and my minor child's acts and deeds, is true, and insofar as it relates to the acts and deeds of any other person, I believe it to be true.

Bahjeh Rizeq

SWORN TO AND SUBSCRIBED before me
this _19_ day of August, 2018.

Notary Public

ISMAA'EEL HAROLD HACKETT JR.
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 2, 2021

2

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DARUL AMAANAH ACADEMY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) C.A. No. 2018-____-____ |
| | ) |
| CITY OF WILMINGTON, WILMINGTON | ) |
| PARKS AND RECREATION | ) |
| DEPARTMENT, MAYOR MICHAEL S. | ) |
| PURZYCKI, in his official and personal | ) |
| capacities, and KEVIN F. KELLEY, SR., in | ) |
| his official and personal capacities, | ) |
| | ) |
| Defendants. | ) |

## VERIFICATION OF TIANA RUSSELL

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) ss. |
| COUNTY OF NEW CASTLE | ) |

I, Tiana Russell, being duly sworn, hereby depose and say as follows:

I have reviewed the Verified Complaint, and declare that the matter contained therein, insofar as it concerns my and my minor child's acts and deeds, is true, and insofar as it relates to the acts and deeds of any other person, I believe it to be true.

Tiana Russell

SWORN TO AND SUBSCRIBED before me
this _17th_ day of August, 2018.

Notary Public

ISMAA'EEL HAROLD HACKETT JR.
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires March 2, 2021

# TAB 3

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

# Exhibit A

Welcome to USA TODAY NETWORK'S EUROPEAN UNION EXPERIENCE

Learn More



## Muslim swimmers asked to leave Wilmington public pool; mayor apologizes

**Christina Jedra**  |  Delaware News Journal
Published 1:00 p.m. UTC Jul 17, 2018

It's the fourth year Tahsiyn A. Ismaa'eel has taken children, participants in her summer Arabic enrichment program, to the Foster Brown public pool in Wilmington.

But this year marked the first time some of her elementary schoolers were asked to leave the pool, Ismaa'eel said — supposedly because they were wearing cotton shirts, shorts, and hijabs, or headscarves.

The pool manager said it's against city policy to wear cotton in public pools, according to Ismaa'eel. If it's a rule, Ismaa'eel said, "it's never been enforced."

To pick on her group is discrimination, she said.

"There's nothing posted that says you can't swim in cotton," said Ismaa'eel, owner and principal of the Darul-Amaanah Academy and director of its summer program. "At the same time, there are other kids with cotton on. … I asked, 'Why are my kids being treated differently?'"



Director of Darul-Amaanah Academy Tahsiyn Ismaa'eel watches over swimmers from her academy Thursday, July 12, 2018 at Dr. Foster M. Brown Pool in Wilmington.
Jerry Habraken, The News Journal

Ismaa'eel, who wears a hijab with a niqab covering her face, said she told the manager she would relay the message to the program parents. But that didn't resolve the issue.

"She (later) had a police officer come over and ask what time we were leaving," Ismaa'eel said.

A city officer often sits in a patrol car outside the pool, Ismaa'eel said, but it's unusual for officers to enter

the facility.

"She said there are people waiting to get in and waiting for you to leave," Ismaa'eel said of the officer.

She thought it was strange her children would be asked to leave when she said there was another camp that had been at the pool longer.

"No one is bothering them," she said. "We were approached first about the cotton, and then it became, 'Oh, the pool is overcapacity so you need to leave.' ... I felt very unwanted."

Mayor Mike Purzycki's office declined to be interviewed about the incident. In an emailed statement, John Rago, the mayor's deputy chief of staff for policy and communication, said the supposed cotton ban is a safety issue.

"There are city rules and regulations designed to ensure the safety of those who use the pools," he said. "One of the rules requires that all swimmers wear proper swimming attire."

Since publication, Purzycki apologized and said the city used poor judgment in its reaction, a statement read. He said the city should also be held accountable for what happened.

"I apologize to the children who were directed to leave a city pool because of the religious-required clothing they were wearing," Purzycki said. "We also referred to vaguely-worded pool policies to assess and then justify our poor judgement, and that was also wrong."

**RESPONSE TO THIS STORY:** Wilmington Mayor Mike Purzycki's full statement

What "proper attire" means is unclear. The city's posted rules do not define proper swimming attire except to disallow "cut-off jeans." Rago pointed to language from the state, but Delaware's only regulation regarding swimwear at public pools is that bathing suits are "recommended."

Neither set of rules makes any mention of cotton.

"Among the safety considerations is the fact that cotton becomes heavy when wet and weighs swimmers down," Rago said in his statement. "Cotton also strains the pool filtration system more than proper swimwear."

For Naveed Baqir, Ismaa'eel's story is disappointing but nothing new. The executive director of the Delaware Council on Global and Muslim Affairs said Muslims have long encountered problems at public pools — so often, in fact, that many who can afford it buy memberships at private pools known to be Muslim-friendly.

"Long ago, we just gave up on the public pools," said Baqir, who said he was asked to leave a facility years ago after he tried to swim with his legs covered. "For my own children, I'd rather pay the money and be treated like everyone else rather than putting myself in an anxiety situation."



Naveed Baqir is the executive director of the Delaware Council on Global and Muslim Affairs.
JENNIFER CORBETT/THE NEWS JOURNAL

The community has found a safe haven in Kids First Swim School in Elkton, Maryland, Baqir said.

"The solution we've come up with is OK, even though we pay taxes. We contribute in terms of our civic responsibility; we're just not going to use it because it's not worth the headache," he said of public pools.

Baqir said there is "absolutely no doubt" Ismaa'eel's camp was a target of selective enforcement.

"I'm surprised this happened in the city of Wilmington that is supposed to be more progressive and accepting," he said. "It's difficult to walk away from these situations when they happen in places you feel you belong. What message are you giving to these kids? That they don't belong?"

Wilmington mom Mia Miller said her three children, ages 5, 6 and 10, were asked to leave the Foster Brown pool last month. Her two youngest, both girls, wear hijabs.

"It's discrimination any way you look at it," she said. "I witnessed other kids dressed the same way. ... My daughter sat there and cried that day because they had to get out of the pool."

The city is revising its pool signage to "more clearly communicate pool swimwear regulations," Rago said. It will state: "Swimmers must wear proper swimwear (swimwear composed of Nylon, Lycra, Spandex, and Polyester is permitted, but cotton and wool clothes are not permitted.)"

"The city will also retrain pool staff so they are prepared to explain to the public the reason for the swimwear limitations," Rago said. "We apologize for any miscommunication with the family, but their safety was the focus of the city's concern."

"We are not going to go beyond the statement for the moment," Rago said.

Since that first incident on June 25, Ismaa'eel said she was "harassed" on two other occasions by the pool manager about her program participants wearing cotton. On July 6, Parks Director Kevin Kelley Sr. responded to an email from Ismaa'eel saying he explained to the pool director "the importance of acting in a professional manner."

He added that until the new signs are installed, her participants will be allowed to swim as they are.

"I can provide some more time for the children (to) obtain the proper clothing but they need to wear something other than cotton into the pool," he wrote on Monday in an email obtained by The News Journal.

Purzycki's office would not allow Kelley to comment.

The program director said she's made an effort to inform parents of the apparent rule, but many of them live below the poverty line and cannot afford new swimwear, especially pool-friendly religious garments that Ismaa'eel said can be expensive.

"Kids wear what they have," she said, adding that she wore cotton when she swam at Prices Run pool as a child. "To me, it was heartbreaking to have kids taken out of the pool. ... They were completely confused."

If cotton is truly an issue, Ismaa'eel said her camp will find a way to work with it. But she said policies should be implemented citywide and be posted.

"You don't just spring it on them," she said. "Make people aware and don't treat them like this. ... (Children) don't know about the adults' politics or policies. Kids want to have fun."

*Contact Christina Jedra at (302) 324-2837, cjedra@delawareonline.com or on Twitter @ChristinaJedra.*

**WILMINGTON NEWS:**

Director of Wilmington land bank, 'key' to city development, resigns

Connections severs ties with politicians

Wilmington reviewing why Muslim children were asked to leave public pool

Published 1:00 p.m. UTC Jul 17, 2018

Terms of                    Privacy

Service   •                  Notice

© Copyright Gannett 2018

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

# Exhibit G

City News

## Mayor Purzycki Reverses a City Action Regarding City Pools

**Post Date:**          07/14/2018 6:20 PM

### *He apologizes and says the City used poor judgement in assessing what happened and then how it reacted to the matter*

Wilmington Mayor Mike Purzycki today reaffirmed the City's long-standing policy that all people are welcome at city pools. Purzycki said it was wrong of the City to ask children of the Muslim faith to leave a city pool because of religious-related clothing they were wearing. Purzycki said the City used poor judgement in assessing this entire matter and equally poor judgement in reacting to it.

"We should be held accountable for what happened and how poorly we assessed this incident, said Mayor Purzycki. "I apologize to the children who were directed to leave a city pool because of the religious-required clothing they were wearing," said Mayor Purzycki. "We also referred to vaguely-worded pool policies to assess and then justify our poor judgement, and that was also wrong."

The Mayor said he hopes to meet soon with the children's camp director and with the children who were asked to leave the city pool so he can address their concerns and offer a personal apology. The Mayor also said he wants to assure everyone that religious-related garb is permitted at city pools. The Mayor said the City needs to be better than this, and he hopes that his words today will begin to rectify the situation.

_____

**News and information from the Office of Wilmington Mayor Mike Purzycki**

**John Rago**
Deputy Chief of Staff for Policy and Communications
Mobile: (302) 420-7928
Email: jrago@WilmingtonDE.gov

**Paul Ford Jr.**
Communications Specialist
Mobile: (302) 530-2171
Email: plford@WilmingtonDE.gov

**Dan Sanchez**
Digital & Social Media Manager
Mobile: (302) 605-0026
Email: dsanchez@WilmingtonDE.gov

EFiled:  Aug 22 2018 12:15PM EDT
Transaction ID 62371814
Case No. 2018-0618-

# Exhibit I

# City of Wilmington



**MICHAEL S. PURZYCKI**
**Mayor**

Law Department
(302) 576-2175

July 31, 2018

**VIA U.S. MAIL AND ELECTRONIC MAIL**
Juvaria Khan, Esq.
Staff Attorney
Muslim Advocates
P.O. Box 66408
Washington, D.C. 20035
juvaria@muslimadvocates.org

  Re: **Dr. Foster M. Brown Community Pool**

Dear Ms. Khan:

  The City of Wilmington (the "City") is in receipt of your letter to Mayor Purzycki and Director Kelley dated July 19, 2018. Please note the City takes these matters very seriously and is currently reviewing the allegations set forth in your letter.

    Sincerely,

    Tara DiRocco Gryan
    Senior Assistant City Solicitor

cc: Mayor Michael S. Purzycki
  Director Kevin F. Kelley, Sr.

# Exhibit J

| | |
|---|---|
| **From:** | Gardner, Cliff C (WIL) |
| **Sent:** | Monday, August 20, 2018 8:32 PM |
| **To:** | 'Tara M. DiRocco' |
| **Cc:** | 'Juvaria Khan'; Johnathan Smith; Nimra Azmi |
| **Subject:** | RE: [Ext] RE: Dr. Foster M. Brown Community Pool |
| | |
| **Retention:** | Sent Item |

Tara,

We write in response to your August 16 email, which was not a good-faith response.

First, you say that the children of Darul Amaanah "were never prohibited from swimming because of their desired attire." But Mayor Purzycki himself publicly admitted that the children "were directed to leave a city pool because of the religious-required clothing they were wearing."

Second, the City has repeatedly changed its position about whether a "no-cotton" policy exists – at times changing its position even within the same day. Yet you ignore our request that you provide us the actual policies in place during the 2018 season and fail even to address the current state of the City's policies.

Third, you blame the victims and say the City's investigation is impeded by our clients' failure to sit down with your lawyers. That is not fair or accurate. Our clients reached out to the City at the start of the summer, followed up multiple times thereafter and met with Director Kelley. Discrimination nevertheless continued. The pool season has now ended and the City has still not substantively addressed our clients' repeated complaints. To illustrate, our clients have received only a two-sentence response to their cease and desist letter and a single phone call from a lawyer. When your lawyers asked to sit down with our clients they were told that our clients would do so only with assurance that the City is open to a good faith resolution that ensures the children can use the pool free from discrimination. That assurance never came and your email makes clear that is not forthcoming.

Fourth, you say that "working collaboratively" is "currently premature." That statement is incredible. The Darul Amaanah community are longstanding residents and leaders within the City of Wilmington, and the fact that Mayor Purzycki and other City officials are refusing to engage and work collaboratively with them is deeply troubling and disappointing. The City has had all summer to address the discrimination that our clients have faced, and has shown no substantive progress.

Regards,

Cliff

---

**From:** Tara M. DiRocco [mailto:tmdirocco@wilmingtonde.gov]
**Sent:** Thursday, August 16, 2018 4:55 PM
**To:** Gardner, Cliff C (WIL)
**Cc:** 'Juvaria Khan'; Johnathan Smith; Nimra Azmi; Tara M. DiRocco
**Subject:** [Ext] RE: Dr. Foster M. Brown Community Pool

Cliff,

Thank you for your email.  As your clients are aware, on the City's own initiative together with your clients' request, the City has retained a third-party (Richards, Layton & Finger) to fully and promptly investigate the allegations related to the use of Dr. Foster M. Brown Community Pool ("Brown Pool").  The investigation is underway; material progress has been made, but is not yet complete.  Please note the investigators have been waiting since August 1, 2018 to hear back from your co-counsel as to whether the parents of the children in the Darul Amaanah Academy ("Darul Amaanah") will agree to be interviewed as part of the investigation.  Additionally, it is my preliminary understanding that the children of Darul Amaanah continued to swim this summer at the City's pools in the attire of their choice.  In other words, they were never prohibited from swimming because of their desired attire.  It is also my understanding they are interested in swimming in the City's indoor pool at the William Hicks Anderson Community Center and that they have been informed that they are welcome to do so.

After the conclusion of the investigation and before the next outdoor swim season, the City intends to review its practices and policies for its pools and will notify the public accordingly.  The City is open to working collaboratively with you, your clients and others in this regard but such is currently premature in light of the ongoing investigation.  We will notify you once the investigation has been completed, and, at that time, hope to be in a better position to discuss next steps.  Consequently, we would kindly ask that you refrain from filing any suit until such time.

Regards,
Tara

Tara DiRocco Gryan, Esquire
Senior Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Building
800 N. French Street, 9th Floor
Wilmington, Delaware 19801
(302) 576-2190 Office
(302) 379-5763 Cell
tmdirocco@wilmingtonde.gov

---

**From:** Gardner, Cliff C [mailto:cgardner@probonolaw.com]
**Sent:** Tuesday, August 14, 2018 5:00 PM
**To:** Tara M. DiRocco
**Cc:** 'Juvaria Khan'; Johnathan Smith; Nimra Azmi
**Subject:** Dr. Foster M. Brown Community Pool

Ms. Gryan,

My co-counsel (copied here) and I represent Darul Amaanah Academy ("Darul Amaanah"), as well as certain participants and parents of participants in Darul Amaanah's youth summer camp.  We write to follow-up on the July 19, 2018 letter sent to Mayor Michael S. Purzycki and Director of Wilmington Parks and Recreation Department Kevin F. Kelley, Sr.  As outlined in that letter, our clients have suffered ongoing harms in their attempts to swim at the local public pools—harms that the City of Wilmington has had notice of throughout the summer and yet, as of the date of this correspondence, has failed to take any meaningful response.

As such, we write to notify you that we are prepared to commence litigation in order to remedy discriminatory conduct on the part of the City of Wilmington, the Wilmington Parks and Recreation Department, Mayor Purzycki, Kevin Kelley and staff at the Dr. Foster M. Brown Community Pool.  We believe our clients have suffered clear violations of their civil rights under the U.S. federal and Delaware state constitutions.  We

intend to promptly file suit on their behalf seeking injunctive and monetary relief.  These are kids and what happened was wrong.

We are willing to meet in person with Mayor Purzycki in advance of filing suit in order to discuss the harm our clients have suffered and appropriate remedies, if you believe such a conversation would be productive.  Please let me know by **Thursday, August 16, at 5:00 p.m**. if Mayor Purzycki is available and willing to discuss these issues on Friday, August 17.  If such a meeting is scheduled, we require that the City provide to us by Thursday, August 16, by 5:00 p.m., the following items: (1) a copy of all policies that were in place at Wilmington city pools regarding swim attire during the 2018 summer season; and (2) a copy or description of any policies the City is considering adopting or intends to adopt regarding swim attire for any future seasons.  If Mayor Purzycki agrees to meet with us, he should be prepared to discuss and commit to specific reforms that will ensure what happened this summer never happens in this City again.

We look forward to your response.

Regards,

Cliff

**Cliff Gardner**
One Rodney Square | P.O. Box 636 | Wilmington | Delaware | 19899-0636
T: 302.651.3165 | F: 302.574.3165
cliff.gardner@probonolaw.com

----------------------------------------------------------------------------
****************************************************
This email and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me via email at the return address contained in this message and permanently delete the original copy and any copy of any email, and any printout thereof.
****************************************************
==============================================================================

This City of Wilmington e-mail, including any attachments, may contain information that is privileged, confidential and exempt from applicable law. This e-mail is intended to be reviewed by only the individual(s), or organization(s) to which it is addressed. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication, including any attachments, is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by return e-mail and delete this e-mail from your system. Thank You.

# TAB 4

EFiled:  Aug 22 2018 12:15PM EDT
Transaction ID 62371814
Case No. 2018-0618-

SUPPLEMENTAL INFORMATION PURSUANT TO RULE 3(A)
OF THE RULES OF THE COURT OF CHANCERY

The information contained herein is for the use by the Court for statistical and administrative purposes only. Nothing stated herein shall be deemed an admission by or binding upon any party.

1. Caption of Case: **DARUL AMAANAH ACADEMY, TAHSIYN ISMAA'EEL, IMAN ISMAA'EEL, individually and for the benefit of her minor children W.B. and M.B., MIA MILLER, individually and for the benefit of her minor children Y.A.M.-W. and Y.K.M.-W., DAEWANNA WORD, individually and for the benefit of her minor child S.W.T., BAHJEH RIZEQ, individually and for the benefit of her minor child M.A. and TIANA RUSSELL, individually and for the benefit of her minor child S.J., v. CITY OF WILMINGTON, WILMINGTON DEPARTMENT OF PARKS AND RECREATION, MAYOR MICHAEL S. PURZYCKI, in his official and personal capacities and KEVIN F. KELLEY, SR., in his official and personal capacities**

2. Date Filed: **August 22, 2018**

3. Name and address of counsel for plaintiff(s):
   **Cliff C. Gardner (ID No. 5295); Matthew P. Majarian (ID No. 5696); Bonnie W. David (ID No. 5964); Kaitlin E. Maloney (ID No. 6304); Haley S. Stern (ID No. 6349)**
   **920 North King Street, P.O. Box 636, Wilmington, Delaware  19899-0636**

4. Short statement and nature of claim asserted:
   **Plaintiffs seek equitable and other relief to remedy Defendants' continuing violations of Plaintiffs' civil rights secured by Article I, Section 1 of the Delaware Constitution; the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983; and Titles II and VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(a) and (d).**

5. Substantive field of law involved (check one):
   ____Administrative law          ____Labor law              ____Trusts, Wills and Estates
   ____Commercial law              ____Real Property          ____Consent trust petitions
   _X_ Constitutional law          ____348 Deed Restriction   ____Partition
   ____Corporation law             ____Zoning                 ____Rapid Arbitration (Rules 96, 97)
   ____Trade secrets/trade mark/or other intellectual property    ____ Other

6. Related cases, including any Register of Wills matters (this requires copies of all documents in this matter to be filed with the Register of Wills):  **N/A**

7. Basis of court's jurisdiction (including the citation of any statute(s) conferring jurisdiction):
   **10 *Del. C.* § 341; 42 U.S.C. § 1983**

8. If the complaint seeks preliminary equitable relief, state the specific preliminary relief sought.

9. If the complaint seeks a TRO, summary proceedings, a Preliminary Injunction, or Expedited Proceedings, check here __  (If #9 is checked, a Motion to Expedite must accompany the transaction.)

10. If the complaint is one that in the opinion of counsel should not be assigned to a Master in the first instance, check here and attach a statement of good cause. __

_____
Signature of Attorney of Record & Bar ID

Bar I.D.
5295

## STATEMENT OF GOOD CAUSE

It is the opinion of counsel for Plaintiffs that this action should not be assigned to a Master in the first instance.  Plaintiffs seek prompt equitable and other relief to remedy Defendants' continuing violations of their civil rights secured by Article I, Section 1 of the Delaware Constitution; the First and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983; and Titles II and VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(a) and (d).  Given the nature of the claims asserted and relief requested, counsel believes that this action should proceed directly before the Chancellor or a Vice Chancellor of the Court.

_____
Cliff C. Gardner (ID No. 5295)
Matthew P. Majarian (ID No. 5696)
Bonnie W. David (ID No. 5964)
Kaitlin E. Maloney (ID No. 6304)
Haley S. Stern (ID No. 6349)
920 North King Street
P.O. Box 636
Wilmington, Delaware  19899-0636
(302) 651-3000

*Attorneys for Plaintiffs*

DATED:  August 22, 2018

# TAB 5

**EFiled:  Aug 22 2018 12:15PM EDT**
**Transaction ID 62371814**
**Case No. 2018-0618-**

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636

———

TEL: (302) 651-3000

DIRECT DIAL
(302) 651-3165
DIRECT FAX
(302) 574-3165
EMAIL ADDRESS
CLIFF.GARDNER@PROBONOLAW.COM

August 22, 2018

**VIA FILE & SERVE XPRESS**

Register in Chancery
Court of Chancery
Leonard L. Williams Justice Center
500 North King Street, Suite 11600
Wilmington, Delaware  19801

> RE:   *Darul Amaanah Academy, et. al. v.*
> *City of Wilmington, et al.*,
> C.A. No. 2018-___-___ (Del. Ch.)

Dear Sir/Madam:

I write on behalf of Plaintiffs in the above-referenced action

to certify compliance with Rule 5.1(e), in accordance with Rule 5.1(c) of

the Rules of the Court of Chancery.  Plaintiffs have filed Exhibits B-F

and Exhibit H to the Verified Compliant in the above-referenced action

as confidential filings (the "Confidential Filings").  I have reviewed the

Register in Chancery
August 22, 2018
Page 2


Confidential Filings and believe that good cause exists for confidential

treatment.

      Plaintiffs shall use their best efforts to give actual notice to

each person who could have a legitimate interest in designating

information in the Confidential Filings as confidential.

      Pursuant to Rule 5.1(d)(2), Plaintiffs are not required to file

a public version of the Confidential Filings because it is composed of

exhibits.

      I am available at your convenience should you have any

questions.

Respectfully,

Cliff C. Gardner (ID No. 5295)

**Words:  128**


cc:    Register in Chancery

# **TAB 6**

EFiled:  Aug 22 2018 12:15PM EDT
Transaction ID 62371814
Case No. 2018-0618-

ONE RODNEY SQUARE
P.O. BOX 636
WILMINGTON, DELAWARE 19899-0636

TEL: (302) 651-3000

DIRECT DIAL
(302) 651-3165
DIRECT FAX
(302) 574-3165
EMAIL ADDRESS
CLIFF.GARDNER@PROBONOLAW.COM

August 22, 2018

**VIA FILE & SERVE*XPRESS***

Members of the Court of Chancery
Court of Chancery
Leonard L. Williams Justice Center
500 North King Street, Suite 11600
Wilmington, Delaware  19801

RE:   *Darul Amaanah Academy, et. al. v.*
*City of Wilmington, et al.,*
C.A. No. 2018-___-___ (Del. Ch.)

Dear Members of the Court of Chancery:

Today, I and several of my colleagues filed a Verified Complaint

commencing the above-referenced action.

Rule 6.1 of the Delaware Lawyers' Rules of Professional Conduct

states that "[a] lawyer should render public interest legal services" and

may do so at no fee "to persons of limited means or to public service or

charitable groups or organizations…." DEL. LAWYERS' R. PROF. COND.

Members of the Court of Chancery
August 22, 2018
Page 2


6.1 and comments thereto.   I write to inform the Court that we represent

the Plaintiffs in this action on a pro bono basis.

As always, we are available at the call of the Court should there be

any questions.

Respectfully,

Cliff C. Gardner (ID No. 5295)

**Words:  107**


cc:    Register in Chancery